IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY DEVON OBEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:22-CV-194** |
| | ) | |
| **UNIT MANAGER COLLEY, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM ORDER**

This action was received by the Clerk of Court on June 27, 2022. The matter was assigned to United States Chief Magistrate Judge Richard A. Lanzillo. Because not all parties consented to the full jurisdiction of a Magistrate Judge in accordance with 28 U.S.C. § 636(c), the undersigned was assigned and the matter was referred to Judge Lanzillo for report and recommendation in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules.

Plaintiff Gregory Devon Obey, an inmate, brings this suit based on alleged inadequacies in the medical treatment he received while incarcerated at FCI McKean. He asserts that the care he received for abdominal distress and a ruptured ulcer in April and May of 2022 violated his constitutional rights under the Eighth and Fourteenth Amendments. Plaintiff also raises a medical malpractice claim under state law. As Defendants, Plaintiff has named Unit Manager Colley, Officer Donoghue, J. Walker, Lt. Blankenship, as well as "FCI McKean Health Service Worker in shift during the day of incident."

1

Defendants Blankenship, Donoghue, and Walker[1] moved to dismiss the complaint pursuant to Rule 12(b)(6), and moved alternatively for summary judgment pursuant to Rule 56 based on Obey's failure to exhaust his administrative remedies. ECF No. 16.

By Report and Recommendation dated July 24, 2023, Chief Magistrate Judge Lanzillo recommended that the motion for summary judgment be granted and that the motion to dismiss be denied without prejudice. ECF No. 28. Judge Lanzillo found that Plaintiff had failed to comply with the Prison Litigation Reform Act's ("PLRA") exhaustion requirement because there was no evidence that Plaintiff even attempted to grieve any complaint regarding the allegedly inadequate medical care.[2] *Id*. at page 7.

Plaintiff filed Objections [ECF No. 29], Defendants filed a Response to those Objections [ECF No. 30], and Plaintiff filed a Reply [ECF No. 31]. "If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) *quoting* 28 U.S.C. § 636(b)(1). Regardless of whether timely objections are made, district courts may accept, reject, or modify—in whole or in part—the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Local Rule 72(D)(2).

---

[1] Defendants Cooley and Health Service Worker have not been served with the complaint and so have not joined in the dispositive motion.

[2] Plaintiff's failure to exhaust as proven by Defendants Donoghue, Walker, and Blankenship, is likely equally fatal to Plaintiff's claims across all Defendants. Because Rule 56(f) requires a court to give a plaintiff "notice and a reasonable opportunity to respond" before granting summary judgment to a non-movant, it is premature to grant summary judgment as to all Defendants at this time.

*Plaintiff's Objections*

In his Objections, in addition to reiterating an earlier request for the appointment of counsel, Plaintiff argues that this Court should excuse the failure to exhaust his administrative remedies. ECF Nos. 29, 31. In support of his argument, Plaintiff points this Court to the *Ridley v. Smith* decision and the *Accardi* doctrine. Both of Plaintiff's arguments are misplaced.

Plaintiff's citation to *Ridley v. Smith*, 179 Fed. App'x 109 (3d Cir. 2006) does not excuse his failure to exhaust here. *Ridley's* holding applies to the failure to exhaust in the context of a habeas corpus petition. *Id*. The exhaustion doctrine in relation to habeas corpus actions requires a petitioner to provide the state courts with one full opportunity to rule on federal habeas claims before presenting those claims to the federal courts, while the exhaustion of administrative remedies mandated by Congress in the PLRA mandates that an inmate exhaust his administrative remedies before filing suit. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) ("[E]xhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit…"). *See also Woodford v. Ngo*, 548 U.S. 81 (2006) (comparing and contrasting judicial doctrine relating to habeas jurisprudence with Congressional intent in the enactment of the PLRA).

Plaintiff's invocation of the *Accardi* doctrine is even less useful to overcome his failure to exhaust. The doctrine "provides that when an agency fails to follow its own procedures and regulations, that agency's actions are generally invalid." *Hunt v. Carver*, 2020 WL 9348170, at *11 (S.D. W.V. 2020) *citing United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "Numerous courts have held the *Accardi* doctrine therefore provides plaintiffs with a means by which they can hold agencies accountable to their own policies." *Damus v. Nielsen*, 313 F.Supp.3d 317, 336 (D.C. D.C. 2018). Plaintiff does not cite to the *Accardi* doctrine as proof that

the Bureau of Prisons failed to follow its own <u>grievance</u> procedures.[3] Instead, he attempts to use the doctrine to point out that prison staff failed to follow Program Statement 6031.01(9) which details procedures for emergency and urgent patient care. Plaintiff misunderstands the PLRA's exhaustion requirement. Under the PLRA, "a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions." *Ansley v. Wetzel*, 2023 WL 5672312 at *3 (M.D. Pa. Sep. 1, 2023) *citing Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). *See also* 42 U.S.C. § 1997e(a). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). When undertaking an exhaustion analysis, the Court must look to the grievance procedures of the prison in which the inmate is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules … that are defined not by the PLRA, but by the prison grievance process itself.") (internal citation omitted). The Bureau of Prisons' failure to abide by its own emergency medical care directives, even if proven, does not serve as an excuse for Plaintiff's failure to adhere to the Bureau of Prisons' grievance directive which is mandated by the PLRA before an inmate may file suit in federal court.

In his reply to the Bureau of Prisons' response to his objections, Plaintiff argues that

> "The Government would rather this Court pay more attention to Mr. Obey's perceived failure to abide by the PLRA's Grievance exhaustion requirements than focus on the undisputed fact that FCI McKean's negligence and malpractice would have resulted in Mr. Obey having bled to death from internal bleeding resulting from his ruptured ulcer and the subsequent abdominal bleeding."

---

[3] This argument would also be unavailing as there is no record evidence that Plaintiff filed any administrative remedy request related to the events described in the complaint.

ECF No. 31, page 2. Although it sounds harsh, Plaintiff's summary in this regard is a correct legal statement. The PLRA requires this Court to inquire whether an inmate has exhausted his administrative remedies prior to filing suit. If the question is answered, as here, in the negative, no legal determination of the merits is conducted, no matter how dire the alleged underlying facts may be.

*Plaintiff's recurring request for counsel*

The docket in this case reflects that Plaintiff requested the appointment of counsel verbally during a status conference on July 19, 2023. ECF No. 27. A transcript of that status conference reveals that Chief Magistrate Judge Lanzillo indicated that he would defer decision on the appointment of counsel. After the Report and Recommendation was filed, Judge Lanzillo issued an order denying the appointment of counsel "for the reasons stated on the July 19, 2023 status conference record." ECF No. 32. Although Judge Lanzillo indicated that "if there has been a failure to exhaust that would be dispositive of your claims, … the appointment of counsel would not be of assistance to you," he did not undertake a full *Tabronic* analysis. Accordingly, and because Plaintiff reiterates his request for counsel in his Objections, the undersigned must do so here.

In *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), the Third Circuit identified factors to be considered by the district courts in exercising their discretion whether to "appoint" counsel under 28 U.S.C. § 1915(d).[4] "As a threshold matter, a district court must assess whether the claimant's

---

[4] The Third Circuit has also recognized that there are significant practical restraints on the district court's ability to "appoint" counsel, including: "the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *Tabron*, 6 F.3d at 157.

5

case has some arguable merit in fact and in law." *Tabron* at 155. Provided that this consideration is satisfied, the court must then consider these factors to determine whether to appoint counsel:

1. the plaintiff's ability to present his or his own case;
2. the difficulty of the particular legal issues;
3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
4. the plaintiff's capacity to retain counsel on his or his own behalf;
5. the extent to which a case is likely to turn on credibility determinations, and;
6. whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d 492, 499 (3d Cir. 2002) *quoting Tabron* at 6 F.3d at 155-157.

Plaintiff has ably presented his case throughout the proceedings and so the first factor weighs against the appointment of counsel. Plaintiff's submissions to the Court reveal that he is literate and articulate. His complaint shows an understanding of the factual basis for his legal claims. His brief in opposition to the Government's dispositive motion is coherent and well laid out (even if it is not responsive to Defendants' exhaustion defense). Each of these, as well as Plaintiff's conversational skills at the telephone conference as revealed in the transcript, suggests that Plaintiff possesses the ability to present his own case.

Plaintiff's claims do not present any particularly difficult legal issues. This is a straightforward case. Thus, the second *Tabron* factor also weighs against appointment of counsel. As for the remaining *Tabron* factors, the Court notes that practically every case that proceeds to discovery involves a reasonable amount of factual investigation. Plaintiff's claims, however, do not appear to require expert testimony, particularly complex credibility determinations, or unusually burdensome discovery. Moreover, as a *pro se* litigant, Plaintiff has had the benefit of *Haines v. Kerner* and its progeny. 404 U.S. 519, 520-21(1972) (*pro se* pleadings should be held to less stringent standards than formal pleadings drafted by lawyers).

6

Finally, it must also be noted that under our Local Rules of Court, motions for the appointment of counsel submitted by incarcerated individuals who are proceeding pro se, as Plaintiff is, are not to be granted until after dispositive motions have been resolved absent special circumstances. *See* W.D. Pa. LCvR 10C. The reason underlying this Local Rule is clear in a case like this one: Plaintiff's failure to exhaust his administrative remedies in compliance with the requirements of the PLRA cannot be overcome by the aid and counsel of an attorney. Counsel would be of no assistance to him.

After *de novo* review of the complaint and filings in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 27th day of September 2023;

IT IS HEREBY ORDERED that the motion for summary judgment be granted and that the motion to dismiss be denied without prejudice. ECF No. 16. Summary judgment is granted in favor of Defendants Blankenship, Donoghue, and Walker and against Plaintiff pursuant to Fed.R.Civ.P. 58.

IT IS FURTHER ORDERED that the Report and Recommendation of Chief Magistrate Judge Lanzillo, issued on July 24, 2023 [ECF No. 28] is adopted as the opinion of the court. Plaintiff's Objections are overruled.

IT IS FURTHER ORDERED that Plaintiff's renewed request for the appointment of counsel is denied.

AND, IT IS FURTHER ORDERED that this matter is remanded to Chief Magistrate Judge Lanzillo for consideration of whether summary judgment should be entered by this Court

in favor of the remaining Defendants based on Plaintiff's failure to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge
